## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SALVATORE FACCIPONTE, JR.,** | : | 3:09cv1584 |
| *Individually and as Co-Administrator of* | : | |
| *the Estate of Salvatore Facciponte, III, deceased,* | : | **(Judge Munley)** |
| **DEBORAH P. FACCIPONTE,** *Individually and* | : | |
| *as the Co-Administrator of the Estate of* | : | |
| *Salvatore Facciponte, III, deceased,* | : | |
| **STEVEN JAY LARSON,** *Individually and as* | : | |
| *Co-Administrator of the Estate of* | : | |
| *Andrew Thomas Larson, deceased,* | : | |
| **MARY AGNES HIGGINS-LARSON,** | : | |
| *Individually and as Co-Administrator of the Estate* | : | |
| *of Andrew Thomas Larson, deceased,* | : | |
| **MICHAEL F. MCGOVERN, SR.,** *Individually* | : | |
| *and as Co-Administrator of the Estate of* | : | |
| *Michael F. McGovern, Jr., deceased,* | : | |
| **THERESA L. MCGOVERN,** *Individually and as* | : | |
| *Co-Administrator of the Estate of* | : | |
| *Michael F. McGovern, Jr., deceased,* | : | |
| **MARGARET ANN WATT,** *Individually and as* | : | |
| *Administrator of the Estate of Michael P. Hopkins,* | : | |
| *deceased,* | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BRIGGS & STRATTON CORPORATION,** | : | |
| **TRUE VALUE COMPANY,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court are motions in limine filed by the parties to this case.  Having

been fully briefed, the matters are ripe for disposition.

## Background

This cases arises from the death of four young men, Salvatore Facciponte III,

Andrew Larson, Michael McGovern, Jr. and Michael Hopkins, on February 9, 2008. The young men died after using a portable generator manufactured by Defendant Briggs & Stratton Corporation to provide electricity in a home.  Plaintiffs allege that the men's deaths were caused by failings in the design of the generator and defendants' failure to warn them about dangers from the generator.  These design failings allegedly caused the young men to be unaware of the dangers of running the generator in an enclosed space.

After the court denied defendants' motion for summary judgment, the parties filed motions in limine in anticipation of the pre-trial conference.  The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Plaintiffs and decedents are citizens of Pennsylvania.  Defendant Briggs & Stratton is a Wisconsin Corporation with its principal place of business in that state. Defendant True Value is a Delaware Corporation with its principal place of business in Illinois.  The amount in controversy exceeds $75,000.  The court therefore has jurisdiction to 28 U.S.C. § 1332.  The court is sitting in diversity, and therefore the substantive law of Pennsylvania shall apply.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

The parties filed various motions.  The court will address each in turn.

**Plaintiffs' Motions**

### i.  Motion to Preclude Evidence of the Lack of Incidents Involving Carbon Monoxide Poisoning Injury or Aspyxiation (Doc. 70)

Plaintiffs argue that defendants should be excluded from introducing any evidence of a lack of prior incidents involving carbon monoxide poisoning from the use of portable generators.  They argue that the Third Circuit of Court of Appeals has ruled that evidence of a lack of prior incidents cannot be introduced without proper foundation, and that defendants have not provided any evidence that indicates that a lack of carbon monoxide poisoning occurring indicates that the public has generally safely used such generators.

Plaintiffs do not claim that the evidence defendants may introduce is irrelevant or unduly prejudicial.  Instead, they point to the holding of the Third Circuit Court of Appeals in Forrest v. Beloit Corp., 424 F.3d 344 (3d Cir. 2005) and argue that "any inference that a lack of claims equates to implied safe use is an improper inference." In Forrest, the Court of Appeals concluded that the trial court had improperly permitted the defendant to introduce evidence of an alleged lack of prior accidents involving a printing machine that had injured the plaintiff.  Two employees had testified that over the long course of their employment they had never seen an accident similar to the one plaintiff suffered, though workers had for years used the machine in the same way plaintiff had.  Id. at 353-54.  Defense counsel had argued that the testimony showed that "the only accident we know of, in thirty-six years . . . was" plaintiff's.  Id. at 354.  Plaintiff's counsel had repeatedly objected that this

3

testimony about prior accidents lacked proper foundation.  Id.  The defendant's former chief engineer had admitted at his deposition that defendant kept no records relating to safety complaints or prior accidents involving the machine.  Id.  Still, the district court allowed such evidence to be introduced.

The Court of Appeals noted that "in federal court the admissibility of evidence concerning an absence of prior accidents is governed by federal law" and "turns on the facts and circumstances of each case."  Id. at 358.  In such cases, "[t]estimony concerning an alleged absence of prior accidents will usually satisfy the relevance threshold established by [Federal Rule of Evidence] 402."  Such evidence does not allow a plaintiff to interrogate the circumstances and determine why an accident did not occur.  "[B]y its very nature," then, that evidence "raises significant concerns regarding unfair prejudice to the plaintiff, and these concerns are heightened in product liability cases arising under Pennsylvania law."  Id.  Federal Rule of Evidence 403 requires a district court to "balance the probative value of such evidence against its likely prejudicial effect, but the evidence may not be excluded unless the unfair prejudice created by admitting the evidence would substantially outweigh its probative value."  Id.  Introducing such evidence, therefore, requires a showing that "(a) a significant number of substantially identical products have been used in similar circumstances over a period of time; (b) the witness would likely be aware of prior accidents involving these products; and (3) to the witness's knowledge, no such prior accidents have occurred."  Id. at 355-56.

4

The court will deny the motion without prejudice to plaintiffs raising it again at an appropriate time.  This case is about whether defendants manufactured an unreasonably dangerous product that caused the young men's deaths.  Whether other deaths have been associated with the product, therefore, has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and is relevant.   FED. R. EVID. 401.  Whether that evidence is unduly prejudicial, and therefore inadmissible, will be determined by whether defendants can lay a proper foundation, as explained above.  See FED. R. EVID. 403 (establishing that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.").  Plaintiffs have not to this point explained why defendants cannot lay a proper foundation for this evidence.  If they cannot do so at trial, however, plaintiffs may renew their motion.

### ii.  Motion to Preclude Evidence of Alleged Marijuana, Drugs, Alleged Drug Paraphernalia, or Alleged Drug Usage by Plaintiffs' Decedents

Defendants seek to exclude any evidence of marijuana or drug paraphernalia allegedly found at the scene of the accident by investigators.  They argue that no evidence exists to indicate that any of the decedents used marijuana, or that there was even marijuana on the scene.  Police investigators reported finding "suspected"

marijuana on the scene, but they did not test any of the substances found.  Drug

tests done on the decedents did not test positive for marijuana.  Because there is no

evidence indicating that any of the defendants consumed marijuana on the night in

question, plaintiffs argue that the evidence is irrelevant, and if relevant, prejudicial.

Defendants argue that circumstantial evidence exists to indicate that the decedents

smoked marijuana on the night in question.  One of the decedents had a history of

marijuana use, they point out, marijuana pipes were found near the decedents'

bodies, a marijuana grinder was found in the same area, and Decedent Salvatore

Facciponte, Jr., had a foamy substance coming out of his mouth that a police officer

surmised could have been the result of ingesting marijuana.  Moreover, the evidence

is relevant, defendants claim, because at issue are the judgments decedents made

on the night they died.  If they were under the influence of drugs, they may not have

been capable of heeding the warnings on the generator that are here at issue.

　　　　At issue here is whether evidence of intoxication is admissible in this case.

"[T]he well-settled law of this Commonwealth is that where recklessness or

carelessness is at issue, proof of intoxication is at issue, proof of intoxication is

relevant, but the mere fact of consuming alcohol is inadmissible as unfairly

prejudicial, unless it reasonably establishes intoxication."  Locke v. Claypool, 627

A.2d 801, 803 (Pa. Super. Ct. 1993) (quoting Whyte v. Robinson, 617 A. 2d 380, 383

(Pa. Super. Ct. 1992)); see also, Critzer v. Donovan, 137 A. 665, 666 (Pa. 1927)

(precluding testimony that a driver's breath smelled of alcohol after an accident

because "[t]here was no allegation or proof of intoxication, nor was there any

evidence of conduct or appearance from which a reasonable inference could be

drawn that the man was intoxicated" beyond the statement on order.  "[T]his was not

a sufficient basis to justify the admission of the witness' conclusion that the person in

question was intoxicated.").  Courts have come to this conclusion because "while

proof of intoxication is relevant where reckless or careless driving of an automobile is

the matter at issue, the mere fact of drinking intoxicating liquor is not admissible,

being unfairly prejudicial, unless it reasonably establishes a degree of intoxication

which proves unfitness to drive."  <u>Fisher v. Dye</u>, 125 A.2d 472, 476 (Pa. 1956).  The

standards articulated in Pennsylvania cases, based as they are on weighing the

balance between relevance and prejudice, apply in federal court.  <u>Rovegno v.</u>

<u>Geppert Bros., Inc.</u>, 677 F.2d 327, 329 (3d Cir. 1982).  Courts have applied the

same rule to the consumption of marijuana: "where it cannot be established that the

use of marijuana rendered a driver unfit to drive or impaired his ability to drive safely,

the use of marijuana is inadmissible to prove recklessness or carelessness."

<u>Hawthorne v. Dravo Corp.</u>, 508 A.2d 298, 303 (Pa. Super. Ct. 1986).

The court will grant the plaintiffs' motion on this point.  In this case, there is

circumstantial evidence by which a jury could conclude that at least some of the

young men at some point on the night in question ingested marijuana.  That

evidence includes police reports that indicate drugs were found near the decedents'

bodies, the presence of marijuana pipes, and an expert report that speculates that a

7

proper test would have revealed the presence of drugs in the young men's bodies. Still, even assuming that a jury could reasonably conclude that the young men smoked marijuana that evening, there is no evidence beyond mere speculation to indicate how much marijuana they smoked, when they smoked it, or how the drug influenced their behavior.   There is no evidence to indicate that they were intoxicated when they set up the generator, however, and thus no evidence which would allow admission of the evidence of marijuana.  See Locke, 627 A.2d at 803-4 (finding that evidence that plaintiff smelled of alcohol, a blood test indicating a blood alcohol content of .06% and an expert report that "extrapolated the test results and concluded that because Locke was a minor, he would have an exaggerated reaction to alcohol" was not enough to establish intoxication and permit evidence of alcohol consumption.).

This case is similar to Pennington v. King, 2009 U.S. Dist. LEXIS 12779, No. 07-4016 (E.D. Pa. Feb. 19, 2009).  In that case, the plaintiffs sued the operator of a tractor trailer whose vehicle collided with an SUV the decedent was driving.  Id. at *3. They alleged that the defendant had operated his vehicle while under the influence of marijuana, and was thus liable for negligence, recklessness and punitive damages.  Id. at *3-4.  The defendant spoke with law enforcement officials and an eyewitness after the accident, and none of them reported that he exhibited any signs of intoxication or impairment.  Id. at *7.  At the same time, plaintiffs produced the report of a toxicology expert who concluded that if the defendant showed signs of

8

impairment while driving, his smoking of marijuana could be blamed for that impairment.  Id. at *6.  The court granted the defendant's motion for summary judgment on plaintiffs' claim for punitive damages, even though under Pennsylvania law driving while intoxicated "'may under certain circumstances be deemed 'outrageous conduct' and a 'reckless indifference to the interests of others' sufficient to allow the imposition of punitive damages.'" Id. at *12 (quoting Focht v. Rabada, 268 A.2d 157, 160 (Pa. Super. Ct. 1970)).

The court found plaintiffs had not produced sufficient evidence of intoxication, since in Pennsylvania "for evidence of elevated blood alcohol to be admissible, it must be supplemented by other evidence of intoxicated behavior." Id. at *13.  The only evidence of intoxication were "the results of the toxicology screen and [defendant's] admission that he smoked marijuana on the Saturday evening prior to this Monday morning accident." Id. *17.  While the defendant had been speeding and drove in an otherwise "erratic" fashion, that evidence was not sufficient "to introduce evidence of Mr. King's marijuana use at trial." Id. at *18.  The court also rejected the expert report provided by plaintiffs, finding it "weak, speculative, and replete with qualifiers." Id. at *20.  The report did "not assist Plaintiffs in their attempt to offer 'other evidence.' of impairment." Id.   The court therefore refused to consider defendant's prior marijuana use "and his alleged resulting impairment." Id. at *20-21.

Here, the defendants have not produced any evidence that the decedents

were actually intoxicated at the time they decided to run the generator in the

vestibule.  The mere presence of marijuana–which the plaintiffs point out was never

tested and confirmed to be the drug–near the bodies is not evidence of consumption

or impairment.  Defendants seek to introduce such evidence to argue that decedents

were impaired an incapable of following warnings about generator use.  Introducing

such testimony would encourage to jury to speculate about impairment and would be

unfairly prejudicial, since there is no evidence that the decedents were actually

impaired.  As such, the court will grant the motion and exclude the evidence.

### iii.  Motion to Preclude Evidence of Plaintiffs' Negligence or Negligence of Plaintiffs' Decedents in Connection with the Subject Portable Gasoline-Powered Generator

Plaintiffs seek an order from the court precluding the introduction of any

references to negligence by the plaintiffs or the decedents, particularly Andrew

Larson or Salvatore Facciponte, III.  Plaintiffs argue that this court has concluded

that no evidence establishes who placed the generator inside the home, and thus

the expert's conclusion that no injury would have occurred if the decedents had not

ignored the warnings offered by plaintiffs or those affixed to the label on the

generator has no factual basis.  Defendants respond by arguing that they have pled

comparative negligence and causation as affirmative defenses, and nothing in the

court's summary judgment opinion precludes introduction of such evidence.

The court will deny this motion.  In ruling on summary judgment in the third-

party complaint, the court found that no evidence existed by which a jury could

conclude which of the decedents placed the generator in the room where

investigators found it.  The court did not conclude that there was no evidence by

which a jury could find that the decedents had ignored warnings about where to run

the generator.  Indeed, the court explicitly held that the defendants could raise the

issue of the plaintiffs' and their decedents' negligence at trial.  (See Doc. 66 at 29).

Moreover, the issue in this case is, in part, whether the warnings affixed to the

generator were adequate.  The portion of the expert report about which plaintiffs

complain addresses the adequacy of the warnings, concluding that they were

adequate and that the deaths in this case were not the result of the manufacturers'

negligence, but the decedents'.  Such information is not barred by this courts' earlier

opinion, the only grounds upon which the plaintiffs seek preclusion.

### iv.  Evidence of Plaintiff Steven Larson's Previous DUI Convictions and Decedent Andrew Larson's Retail Theft Conviction

Plaintiffs argue that defendants should be precluded from introducing

evidence of two previous DUI convictions by Plaintiff Steven Larson.  According to

the plaintiffs, those convictions resulted in a three-month license suspension in 2005

and a year-long license suspension in 2006.  Larson apparently pled guilty to both

offenses.  There is evidence of a police report naming Decedent Andrew Larson on

a count of retail theft, though plaintiffs claim that Andrew Larson's father cannot

recall a conviction against his son.  Steven Larson admits, however, that he had paid

a fine in connection with this charge.  Plaintiffs argue that this evidence is not relevant.  Even if the evidence were relevant, they insist that introduction would be unduly prejudicial and not admissible under any of the other principles laid out in the Federal Rules of Evidence.  Defendants respond by arguing that the evidence is relevant and not unduly prejudicial.  Steven Larson's DUI conviction helps explain his state of mind in 2005, when he purchased the generator here in question.  His 2006 conviction is admissible under Federal Rule of Evidence 609, as the crime was punishable by more than one year in prison.  Andrew Larson's conviction is admissible as it is relevant to his claim for lost wages.

The court will grant the plaintiffs' motion with respect to Steven Larson's 2005 conviction.  Federal Rule of Evidence 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence."  FED. R. EVID. 608(b).  A party may, at the court's discretion, inquire into such instances "on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness."  FED. R. EVID. 608(b)(1).  The defendants do not contend that Steven Larson's 2005 conviction for drunken driving is admissible through Rule 609.  Instead, they contend that the evidence is relevant on completely different grounds: at issue in this case is Larson's claim that there was no warning label affixed to the generator in question when he purchased the machine in 2005.  If, defendants claim, Larson was drinking

so heavily in 2005 that he was convicted of a DUI, his memory of the purchase of the generator is probably faulty.  The court rejects this argument.  Defendants do not argue that Larson 2005 conviction is evidence by which the jury could evaluate Larson's character for truthfulness; they instead argue that introduction of the evidence would allow jurors to judge the quality of Larson's memory.  Here, however, no evidence connects the date of the generator purchase with the date of Larson's DUI arrest, and the introduction of such evidence seems clearly calculated to invite the jury to decide the case based on Steven Larson's character and past conduct, rather than the relevant factual disputes.  In addition, evidence of a single DUI conviction is not evidence of habitual drunkenness so severe that a memory lapse would occur.

With respect to Larson's 2006 conviction, defendants argue that Rule 609 applies.  Under that rule, "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial affect to the accused."  FED. R. EVID. 609(a)(1).

The court finds that the probative value of admitting this conviction does not outweigh the prejudicial affect of its introduction.  As explained above, defendants'

purpose for admitting the evidence is to question Larson's ability to recall the condition of the generator when he purchased it.  Defendants can question Larson about his ability to remember events from the period–and even, with proper foundation, whether his drinking clouded his memory–when he purchased the generator without referencing an unrelated DUI conviction that does not bear on Larson's capacity for truthfulness or on the events in question.  Introduction of such evidence would serve only to unfairly prejudice the plaintiffs.  The court will therefore grant the motion.

Plaintiffs also seek to preclude evidence of Andrew Larson's conviction for retail theft.  Federal Rule of Evidence 403 provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  FED. R. EVID. 403(b).  Here, defendants argue that the evidence will not be used as improper character evidence, but as a means to challenge the plaintiffs' expert's claims about Andrew Larson's future earning potential.  They insist that a conviction for retail theft would undermine the vocational expert's claims of Andrew Larson's earning potential, particularly in fields like computer security.

The court will grant the motion on these grounds too.  Pocono Township Police apparently arrested decedent Andrew Larson on November 29, 2007, charging him with one count of retail theft.  (See Exh. B to Defendants' Brief in Opposition to Plaintiffs' Motion in Limine (Doc. 104)).  On December 7, 2007, he pled

guilty to the charge and paid fines.  (Id.).  The evidence may be marginally relevant to plaintiffs' claims for damages, though the charge was a minor one, disposed of quickly, and did not amount to any major penalty.  Whatever relevance that minor court appearance has to Andrew Larson's future earning potentially, however, is substantially outweighed by the prejudice that evidence of such conviction would produce.  Indeed, conviction of a single minor retail theft bears such little relation to future earnings that introduction of the evidence would seem more useful as evidence of character, and thus inadmissible.

### B.  Defendants' Motions

Defendants have likewise filed a number of motions in limine.  The court will address each in turn.

### I.  Motion to Exclude Certain Opinions of Rosalyn Pierce

Defendants first seek to exclude portions of the opinions of Rosayln Pierce, a vocational expert employed by plaintiffs to provide evidence of lost future earnings for the decedents.  They argue that Pierce's opinions are not based on reliable methodology, not sufficiently supported but merely speculative, run contrary to the facts of the case and are not held with the requisite degree of professional certainty. As such, defendants contend that the court should preclude Pierce's opinion on the decedents' future occupations and their future earning capacities.

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training or education" may provide opinion testimony

"if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.  Courts have described the function of the district court in determining whether to admit expert testimony as a "gatekeeping" one.  The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 598 (1993).  Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a particular field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

Defendants do not challenge Pierce's qualifications to testify as a vocational expert.  Nor could they.  Pierce's resume discloses that received a BA and MA in rehabilitation counseling and has continued to receive additional education through accredited training programs in the 35 years since her graduation.  (See Exh. A to Plaintiffs' Brief in Opposition).  Pierce has numerous certifications and accreditations in vocational fields.  (Id.).  For more than thirty years, Pierce has worked as an instructor and practitioner in rehabilitative and vocational training.  (Id.).  She has served as a vocational expert in the Officer of Hearings and Appeals for the

16

Department of Health and Human Services for twenty-five years.  (Id.).  Pierce has

lectured at numerous professional conferences related to vocational trainings.  (Id.).

Pierce therefore possesses the requisite skill, knowledge and experience to serve as

an expert on decedents' vocational possibilities.

Defendants' quarrel with Pierce, therefore, is not with her qualifications, but

with the bases of her opinion.  They argue that Pierce's conclusions are not

supported by the evidence in the case, and are instead merely speculation based on

faulty assumptions.  The court finds that the data supports Pierce's report to a

degree sufficient to allow a jury to determine how persuasive her claims are.  Pierce

consulted numerous sources, like school and medical records and the deposition

testimony of those who knew the decedents and their vocational aspirations.

Defendants dispute how realistic these claims are, but such disputes are best left to

the jury.  Since "[t]he grounds for an expert's opinion merely have to be good, they

do not have to be perfect," the court concludes that the evidence is admissible, even

though subject to vigorous challenge by the plaintiffs.  In re Paoli R.R. Yard PCB

Litigation, 35 F.3d 717, 744 (3d Cir. 1994).  As the Third Circuit Court of Appeals has

noted, "A judge frequently should find an expert's methodology helpful even when

the judge thinks that the expert's technique has flaws sufficient to render the

conclusions inaccurate.  He or she will often still believe that hearing the expert's

testimony and assessing its flaws was an important part of assessing what

conclusion was correct and may certainly still believe that a jury attempting to reach

an accurate result should consider the evidence." Id. at 745.

Because defendants' criticisms of Pierce's report are best left for the jury to decide, the court will deny the motion on this point.

### ii. Expert Opinions of David G. Penney

The defendants likewise seek to exclude portions of the expert opinion of David G. Penney, plaintiffs' expert on carbon monoxide poisoning and the adequacy of the warnings on the generator.  They argue that Penney's opinions in question are not based on any reliable methodology or a scientific basis, and are thus unsupported.  Defendants argue that Penney has no expertise in such warnings and is thus unqualified to offer opinions on their adequacy.  In addition, his testimony would be cumulative of two others of plaintiffs' qualified experts, Ezra Krendel and Gary Sheesley.

Defendants do not dispute that Dr. Penney, a toxicologist with decades of experience in researching the effects of carbon monoxide on animals and humans, with hundreds of publications and presentations to scientific audience on the subject, is qualified by experience and training to render an opinion in the area of the effects of carbon monoxide on the decedents in this case.  The court agrees that Dr. Penney is qualified on these matters.  Defendants urge the court to find that Penney's conclusions about the amount of suffering decedents experienced, whether they were awake during their poisoning, and the time of their deaths are insufficiently supported by his sources.  Defendants' complaints are more with the

18

adequacy of Penney's conclusions than with the sources for them.  The court finds

that Penney's conclusions, based on his examination of the scene and investigators'

reports, as well as his extensive background and study in carbon monoxide

poisoning, are sufficiently based on facts and data for a jury to consider.  Defendants

may make their arguments about the persuasiveness of his claims to the jury.  The

motion will be denied on this point.

Defendants also argue that Penney's conclusions on the inadequacy of the

warnings in this case should be suppressed.  They argue that he lacks the requisite

knowledge of human factors and design to allow him to offer an expert opinion on

the warnings.  Penney is clearly an expert in the dangers of carbon monoxide.  His

expertise allows him to opine whether a warning, either affixed to the generator or

stated in a handbook, effectively represents the dangers presented by exposure to

carbon monoxide.  Defendants' arguments about whether Penney's conclusions

about how the warnings would be received go more to the persuasiveness of his

report than to the admissibility of the evidence.  As such, the court will deny the

motion on these grounds as well.

### iii.  Expert Testimony of Gary Sheesley

Defendants also seek to preclude portions of the expert testimony of Gary

Sheesley.  They argue that he is not a human factors expert, and is thus unqualified

to offer an expert opinion on the clarity, efficacy, size and placement of the warnings

provided by the company about the generator here in question.  Moreover,

defendants contend, Sheesley's testimony is cummulative of other testimony in the case and should be precluded on those grounds as well.   Plaintiffs respond that Sheesley's report is written from the perspective of his expertise, mechanical engineering, and that the observations and opinions about which defendants complain fall within the scope of Sheesley's acknowledged expertise.

The court will deny the motion.  The areas of Sheesley's report about which defendants complain address the adequacy and placement of warning labels on the subject generator.  Sheesley opines that the position of the warning label on the machine was dangerous, since it was difficult to see and read for most users. Moreover, this label and another label "did not effectively communicate the danger of the carbon monoxide and what actions were required to avoid that danger." (Sheesley Report, Exh. B to Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. 55) at 15).  Defendants' complaint is that Sheesley's qualifications do not provide him with the expert training and knowledge necessary to make these observations.  The court disagrees.  Sheesley observed the generator and saw where the warning sticker was located, concluding that an average user might overlook it.  This is a simple observation that can be challenged by looking at the generator.  Sheesely's opinion, expressed twice, that the label does not effectively communicate the danger of carbon monoxide, is made in the context of his report's discussion of those dangers and why warnings about them must be explicit.  His report comments on the lack of information in the warning and the

dangers left unexpressed by that warning.  As an expert in such machines and the

dangers they cause, Sheesley has the qualifications and training to describe the

essential contents of the warning label.  Defendants are of course free to attack

these opinions and point out the limited area of Sheesley's expertise on human

factors during cross examination.

### vi.  Motion to Exclude Evidence of True Value Company's Failure to Inspect the Subject Generator

Defendants seek to exclude any evidence of Defendant True Value's failure to

inspect the generator in question before selling that generator to Steven Larson.

The argue that plaintiffs should be prevented from "mentioning, relying on, or offering

evidence of True Value's alleged failure to inspect or test the generator at the trial of

this matter."   Defendants argue that under Pennsylvania law True Value had no duty

to inspect or test the product and therefore cannot be liable for failing to due so.  As

a result, they insist, the evidence is not relevant to the negligence claims against

them.  Plaintiffs respond that defendants knew of the product's potential danger and

therefore had a duty to inspect the generator before selling it.

The court will address this motion and the basis for it at the pre-trial

conference.  The motion goes more to the sufficiency of the evidence for plaintiffs'

negligence claim against True Value than to the admissibility of the evidence in

question.

### v.  Motion to Bifurcate the Trial

Defendants also seek to bifurcate the trial between the liability and damages portions.  They argue that the witnesses needed to prove liability are largely separate from those necessary to evaluate damages and contend that allowing a combined trial on both liability and damages will unfairly prejudice the jury.

Rule 42 of the Federal Rules of Civil Procedure provides for separate trials as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. . .

FED. R. CIV. P. 42.

The decision to bifurcate is left to the trial court's discretion and must be decided on a case by case basis.  Idzojtic v. Pennsylvania R.R. Co., 456 F.2d 1228, 1230 (3d Cir.1972).  In exercising such discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources."  Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984).  The moving party bears the burden of establishing that bifurcation is appropriate.  See Innovative Office Prod., Inc. v. Spaceco, Inc., No. 05-04037, 2006 WL 1340865 *1 (E.D. Pa. May 15, 2006); 9A WRIGHT & MILLER, FED. PRAC. AND PRO. CIV. 2D § 2388.

The court concludes that bifurcation of the trial is inappropriate.  Defendants' position is that the scope of the injuries plaintiffs and their decedents suffered could create prejudice against defendants and prevent the jurors from judging the facts of

the case impartially.   The court, defendants argue, should separate the trial on liability from that on damages.  The court finds that this procedure would create a needless waste of court time and resources.  Every civil trial contains questions of liability and damages, and the decision whether to bifurcate the trial must be based on the particular facts of the case.  See Lis v. Robert Packer Hospital, 579 F.2d 819, 824 (3d Cir. 1978) (finding that "the decision [to bifurcate] must be made by a trial judge only as a result of an informed exercise of discretion on the merits of the case.").   At issue in this case is a determination of products liability and failure-to-warn.  That task is not so complicated that a jury needs to consider the issue of liability separately in a separate proceeding before addressing damages.  See, e.g., Barr Laboratories, Inc. v. Abbott Laboratories, 978 F.2d 98, 115 (3d Cir. 1992) (upholding trial court's decision to bifurcate an anti-trust trial so that the jury could first determine "the proper definition of the relevant product market" since the court concluded "that bifurcation would prove beneficial by enhancing juror comprehension of the complex issues presented.").  Likewise, the extent and nature of the damages are not so complicated that a separate proceeding would be necessary or advisable to avoid jury confusion.  The jury will not be confused by the task of assigning fault for the accident and then, if appropriate, determining the extent of plaintiff's injuries based on the testimony from several experts.

The court also finds that defendants would not be subject to undue prejudice because of the extensive damages suffered by the plaintiffs and decedents in this

case.  If a jury accepts plaintiffs' theory of the case, they will be forced to conclude

that decedents passed away due to the defendants' negligence.  To accept

defendants' position that the extensive liability to which they are exposed inevitably

creates prejudice and entitles them to a separate trial on liability and damages would

be to allow every defendant facing large liability, especially in survival actions, to

receive a bifurcated trial.  The court does not accept the position that a potentially

large verdict creates unfair prejudice and the impossibility of a fair trial.  Here, the

court is confident that a proper explanation of the law will cause the jurors to decide

liability based on the facts of the case, not based on sympathy for the plaintiffs'

losses.

 The court is confident that it can construct a jury charge and verdict slip that

will prevent prejudice to the defendant.  The court presumes that a jury follows

instructions, even in difficult cases, and finds that proper instructions will prevent any

prejudicial conclusions from the jury. <u>See, e.g.</u>, <u>Thabault v. Chait</u>, 541 F.3d 512, 530

(3d Cir. 2008) (upholding decision not to bifurcate trial in part because the court's

jury instructions prevented prejudice against the defendant).  The court will therefore

deny the motion to bifurcate the trial.

**Conclusion**

 For the reasons stated above, the court will grant the parties' motions in limine

in part and deny them in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SALVATORE FACCIPONTE, JR.,** | : | 3:09cv1584 |
| *Individually and as Co-Administrator of* | : | |
| *the Estate of Salvatore Facciponte, III, deceased,* | : | **(Judge Munley)** |
| **DEBORAH P. FACCIPONTE,** *Individually and* | : | |
| *as the Co-Administrator of the Estate of* | : | |
| *Salvatore Facciponte, III, deceased,* | : | |
| **STEVEN JAY LARSON,** *Individually and as* | : | |
| *Co-Administrator of the Estate of* | : | |
| *Andrew Thomas Larson, deceased,* | : | |
| **MARY AGNES HIGGINS-LARSON,** | : | |
| *Individually and as Co-Administrator of the Estate* | : | |
| *of Andrew Thomas Larson, deceased,* | : | |
| **MICHAEL F. MCGOVERN, SR.,** *Individually* | : | |
| *and as Co-Administrator of the Estate of* | : | |
| *Michael F. McGovern, Jr., deceased,* | : | |
| **THERESA L. MCGOVERN,** *Individually and as* | : | |
| *Co-Administrator of the Estate of* | : | |
| *Michael F. McGovern, Jr., deceased,* | : | |
| **MARGARET ANN WATT,** *Individually and as* | : | |
| *Administrator of the Estate of Michael P. Hopkins,* | : | |
| *deceased,* | : | |
|       **Plaintiffs** | : | |
| | : | |
|       **v.** | : | |
| | : | |
| **BRIGGS & STRATTON CORPORATION,** | : | |
| **TRUE VALUE COMPANY,** | : | |
|       **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 29th day of August 2011, the parties' motions in limine

are **GRANTED IN PART** and **DENIED IN PART** as follows:

    1.  The plaintiffs' motion in limine to preclude evidence of absence of prior

incidents of carbon monoxide injuries and deaths related to portable generators

(Doc. 70) is **DENIED WITHOUT PREJUDICE**;

    2.  The plaintiffs' motion in limine to preclude evidence of alleged marijuana,

drugs, drug paraphernalia or alleged drug usage (Doc. 71) is hereby **GRANTED**;

    3.  The plaintiffs' motion in limine to preclude evidence of plaintiffs' negligence

or negligence of decedents (Doc. 72) is hereby **DENIED**;

    4.  The plaintiffs' motion in limine to preclude evidence of DUI involving Steven

Larson and alleged retail theft involving Andrew Larson (Doc. 73) is hereby

**GRANTED**;

    5.  The defendants' motion in limine to exclude certain opinions of Rosalyn

Pierce (Doc. 74) is hereby **DENIED**;

    6.  The defendants' motion in limine to exclude certain opinions of David G.

Penney (Doc. 76) is hereby **DENIED**;

    7.  The defendants' motion in limine to exclude certain opinions of Gary

Sheesley (Doc. 78) is hereby **DENIED**;

    8.  The defendants' motion in limine to exclude evidence of True Value

Company's failure to inspect the subject generator will be discussed at the pre-trial

conference; and

    9.  The defendants' motion to bifurcate the trial (Doc. 82) is hereby **DENIED**.


                             **BY THE COURT:**
                             **s/ James M. Munley**
                             **JUDGE JAMES M. MUNLEY**
                             **UNITED STATES DISTRICT COURT**